We'll hear argument now in the case of the United States v. Spates. Mr. Berg.  Your honors, counsel, good morning. My name is Mark Berg and I represent Mr. Darrien Spates in this morning's hearing. The issue before the court is whether or not the district judge committed clear error in denying his motion to suppress evidence, which is essentially the finding that the court made that the government had carried its burden of proving that the presumptively unreasonable search of the residents in this case was in fact justified. It's our position that the judge relied on the doctrine of consent as the exception to the warrant requirement, and that that consent was tainted with coercion, as well as knowledge of the officer's entry as a protective sweep that we also maintain is illegal. In this case, the officers were dispatched based upon a report of a shot being fired in an upper apartment by the individuals residing in the lower apartment. That was it. Silence, a shot, then somebody walking around up there, and then the police arrived. When they go up to the apartment, my client, Mr. Spates, was discovered to have had outstanding failure to appear warrant on misdemeanor charges pending in state court. He was invited to come out onto the landing. It's an upstairs apartment with an exterior staircase going up to a porch. He came out. He was taken into custody on the warrants. Inside, during the pat-down, inside of his pocket was found a bullet casing. He was asked questions about whether or not there was anyone else in the apartment, and he said there was a small child asleep in the bedroom. He appeared to be noncombative, totally cooperative, and responsive to the questions that were being asked. He was led down to the squad car, and then officers went into the apartment to conduct a protective sweep. Now, there's absolutely no reason to believe that there was any danger to the officers at that point in time. What about exigent circumstances with the child being in the apartment? Well, there needs to be more than just mere and coed suspicion, as this court has held. Now, just the child being in the apartment in and of itself does not necessarily create the exigency that would be required, nor would it, as we maintain, constitute a reasonable basis for a protective sweep. If you look at the testimony of Sergeant Johnson, because it was definitely his testimony that tried to concoct this type of horrific scenario, where there may be this gun in the apartment. The child may be able to reach that gun in the apartment. The child may then possess the gun, and the gun might be loaded, and then the kid may want to play cops and robbers. That creates a very dangerous situation. Now, that in and of itself, there's no evidence to take that from the realm of being what is characterized as a mere and coed and unparticularized suspicion, and corroborate it with anything other than there's a child in the apartment. The basis that the officers maintained in the hearing was there was a possibility there could have been another individual in the apartment besides the child, even though my client told them very candidly there was no one else in there. Counsel, why don't you focus on the girlfriend's consent and why you think that was not voluntary? Yes. Well, when she was questioned, and there's a great divergence of testimony in her testimony versus testimony of Officer Kaya. She indicated that she was told that DCFS was being called to the scene. Officer Kaya, his testimony was kind of unique because it was very, very, in his own words, fuzzy. He didn't seem to have a clear recollection of what he said to her that night. In fact, most of his testimony appeared to be, it's my customary practice to say this, it's my customary practice to say that. But she was told that DCFS was being called. She testified that she was also told that it would look better for DCFS and to the police if she were to give consent. She translated that into, I look guilty if I don't give consent. Now, what makes it coercive is that the introduction of child protective services has absolutely nothing to do with trying to obtain consent to search, unless it's being used as a coercive tactic, which in this case we believe it was. And Officer Kaya couldn't recall whether or not he exactly said those things. He said, well, that doesn't sound like something I would say. But he couldn't recall, again, because of the fuzzy memory, and I'm not sure why that is. He couldn't recall having said it. But she was also taken to the station, and he couldn't recall whether or not she had been told that she would be taken to the station. That's certainly something that if she was told, and to keep the record clear, she couldn't recall whether she was told that either. But she was very clear about being told that it would look better for her if she were to give consent. It would make her look less guilty in the eyes of both child protective services, DCFS, as well as the police. Now, the other thing that makes it inherently coercive is because you take a young mother, or a young father for that matter, and you tell them that DCFS is being called in a situation where your young child is in an apartment and a gun gets fired. The first thing that comes to mind in that individual is, I'm going to lose my child. I'm going to embark on this two to sometimes three-year- to be made to the district judge. It was in fact made to the district judge, and the judge said the decision was nonetheless voluntary. Why is the judge's decision clearly erroneous? Why was it beyond the bounds of reason for the judge to say that she still understood her rights and exercised them voluntarily? Because you could understand your rights. You could be extremely well-versed and very comfortable in the situation of what your rights are, and I believe that counsel will, in brief and in argument, will tell you she was educated. She could read and write. Think about the other things that officers say. They will say, if you cooperate, the criminal justice system is likely to go easy on you. If you don't cooperate, we're going to go get a warrant and bust the doors open with a battering ram. All of those may affect the decision, but we've held none of them precludes a voluntary consent. Why would this, as a matter of law, preclude a voluntary consent when those other things, which also increase the pressure to make a decision, don't? I believe it's unique when you are talking to an individual about losing a child versus offering them an option to cooperate in exchange for leniency for what could be perceived as her own criminal conduct, although in this case there really was no criminal conduct on her part, and she was never charged. Not necessarily the same thing. Well, if you're offering leniency to somebody, there's a presumption they're going to be charged. The police don't know who will be charged. The police know categories of cases that might get charged, depending, of course, on what they find inside. Whether the child might be taken by state officials might depend on whether, when they enter, they found the child playing with a loaded gun. But to get to that point— You can't know what you're going to find inside until you're inside. Which is why the court requires more than mere inchoate suspicion. There has to be some type of additional thing that would make the belief that this child would want to play cops and robbers with this gun. But you can't know that. No one can know that, except perhaps the mother, until the police have gone inside and looked. Well, then there's never going to be a situation where there is an unreasonable protective sweep. And this court has found in the United States versus Colorado— We're not dealing with the reasonableness of the protective sweep here. We're dealing with whether it was clear error for the judge to find that the consent was voluntary. That's where I'm trying to direct your attention. You seem to be saying that if the police say, if you do X, that may make it less likely that you'll lose your child. As a matter of law, that spoils the consent, even if the statement is true, or even if it turns out that inside the child is playing with a loaded gun. To answer your Honor's question, I think I understand it. There would be very little or no nexus between advising her at all in an effort to try to obtain consent that DCFS is being called. The two have nothing to do with each other, unless it's being used as a coercive tactic. Now, the district court found credibility— You sound like you're saying anything the police say designed to induce consent is a coercive tactic. Why is this different from saying, if you don't consent, we will get a warrant and break your door down, and you don't want that? That's very expensive and messy for you. So just consent. That is, of course, a coercive tactic in the sense that it's designed to induce consent. Yes. Why is one worse than the other? Because, I guess, from a qualitative standpoint, what makes, in my opinion, the DCFS scenario more coercive than threatening to bust down someone else's apartment door that I rent from is the prospect of losing your child. I think that has a unique— A district judge must think that. Well, no, it's case by case, Your Honor. Well, as soon as you say that, then the district judge has discretion, and you're not going to be able to persuade us. Well, there's always discretion. That discretion was abused. But there's still— This is fundamentally an argument to be made to a district judge, and we are not district judges. Understood. Nor are we jurors. But with de novo review, you still review— We don't have de novo review. We're asking whether the district judge's finding was clearly erroneous. Right, but it requires a de novo review of the facts to make that decision. No, we do not de novo review the facts. Well, then I misread the terms. District judges make their own conclusions about the facts, subject to clear error review. And it's a very deferential standard, but nevertheless subject to review. A deferential standard is not de novo. Judge, I think—do I still have any— Yes, your time has expired. All right. Well, thank you, then. Thank you. Ms. Bucci. May it please the Court, I am Talia Bucci, and I represent the United States in this appeal. Defendant's argument rests on three sets of factual allegations. The district court held an evidentiary hearing to make determinants on those allegations, and after that evidentiary hearing, the district court ruled against the defendant on each of those three sets. There is support in the record for the district court's findings on each, and those findings are not clearly erroneous. The first set of facts is the defendant argues that McKinney's consent to search was tainted by an illegal protective sweep. As a factual matter, however, the district court found that not to be the case because she knew that they had gone in the apartment to retrieve her son, but that was the extent of it. She did not know and they did not tell her her search had been done. This wasn't a case where the item had already been found and it was a foregone conclusion. Therefore, any illegality in the sweep could not have tainted her consent. In addition, the district court correctly found that the protective sweep was justified under the circumstances. Secondly, defendant argues that McKinney's consent was coerced by the officer's statement that DCFS would be contacted. As the district court found, though, that the officers are mandated reporters. That is an accurate statement of what they were going to do and what they did do. Providing her that information is not unduly coercive. In addition, the child was already with Ms. McKinney at the time. This is not a case where they were threatening to take away her child or threatening to withhold her child. There were some factual differences between what the officers testified to and what McKinney testified to. The district court made those credibility determinations and found the officer's testimony to be more credible. And that conclusion is supported by the record and not clearly erroneous. Third, defendant argues that McKinney's consent was coerced by officer's statement that not signing the consent form would make her look guilty. The district court found that no such statement was made and the record supports that finding. Even though Officer Kaya did not remember every single statement that he made, there was a second officer that testified. And that officer corroborated Officer Kaya's testimony based on his general practice and said that that second officer said he did not recall Mr. Kaya or himself saying that. The district court was entitled to find those officers to be credible and did in fact find those officers to be credible. This case comes down to, as Your Honor was discussing, whether there is clear error. There is no clear error and all of the district court's findings were supported by the record. Unless the court has questions for me, I'll end by asking you to affirm the district court's denial of the defendant's suppression motion. Thank you. Thank you very much. Mr. Byrd, we appreciate your willingness to accept the appointment and your assistance to the court and client as well. The case is taken under advisement.